Record/FILE ON DEMAND

Acceptance of Offer with full immunity AND WITHOUT RECOURSE! NBLB-20190227NLBLBCATR-ATRAB2BOA1

## In the South Carolina DISTRICT Court for the

## DISTRICT of South Carolina at Common Law

RECEIVED
USDC CLERK,CHARLESTON,SC
2019 FEB 28 PM 3:29

The ESTATE OF NELSON LEON BRUCE et. al.

Plaintiff,

v.

Wilmington Savings Fund Society, FSB, et al.

Defendant(s).

Sub contract case No.: 2:18-cv-02555-BHH-BM

**PRESENTMENT TO COMPEL ARBITRATION**
pursuant to the Federal Arbitration Act, 9
U.S.C. § 1, FAA § § 3 or 4 and Supported
by Federal Rules 12(b)(1), 12(b)(3), or
12(b)(6) and law.
The contract referred to is # 2019-
0108BRUCWSFCM–S12389981– 5577899811©

**COMES NOW** the **Presenters**, et al.., and requests this Honorable Court to honor the fact

that the Parties have negotiated an agreement that includes an Arbitration clause. Neither the

federal or state rules of civil procedure line up perfectly with the FAA (for example, Rule 12 does

not list "motion to compel arbitration" as a potential responsive pleading). Federal courts in six

circuits have treated motions to compel arbitration as motions to dismiss for lack of subject matter

jurisdiction under Rule 12(b)(1). A district court in the Eleventh Circuit is the only court to *expressly* state

that motions to compel arbitration should be brought under Rule 12(b)(1). *MRI Scan Ctr., L.L.C. v. Nat'l*

*Imaging Assocs., Inc.*, No. 13–60051–CIV, 2013 WL 1899689, at *2 (S.D. Fla. May 7, 2013). However, in

the Second, Sixth, Eighth, Ninth, and Federal Circuits litigants have been *permitted* to bring motions to

compel under the 12(b)(1) standard. *See, e.g.*, **Geographic Expeditions, Inc. v. Estate of Lhotka, 599 F.3d.**

**1102, 1106–07 (9th Cir. 2010)**; *U.S. ex rel. Lighting & Power Servs., Inc. v. Inferface Constr. Corp.*, 553 F.3d

1150, 1152 (8th Cir. 2009); *Harris v. United States*, 841 F.2d 1097, 1099 (Fed. Cir. 1988); *Multiband Corp.*

*v. Block*, No. 11–15006, 2012 WL 1843261, at *5 (E.D. Mich. May 21, 2012); *Orange Cnty. Choppers, Inc.*

*v. Goen Techs. Corp.*, 374 F. Supp. 2d 372, 373 (S.D.N.Y. 2005).  Other circuits take a different position

asserting that motions to compel arbitration should be brought under Rule 12(b)(3) for improper

venue. The Fourth and Seventh Circuits adopt this approach. These circuits reason that because

arbitration clauses are a type of forum selection clause and therefore concern venue, motions

to compel arbitration should be brought under Rule 12(b)(3). *Gratsy v. Colo. Technical Univ.*, 599

Fed. App'x 596, 597 (7th Cir. 2015); *Hayes v. Delbert Servs. Corp.*, No. 3:14:–cv–258, 2015 WL

269483, at *4 n.1 (E.D. Va. Jan. 21, 2015).  Only one circuit adopts Rule 12(b)(6) — failure to

state a claim upon which relief can be granted — as the proper subpart for a motion to compel

arbitration. The Third Circuit explicitly rejects the practice of bringing motions to compel

arbitration under 12(b)(3) and requires that motions to compel arbitration should be made

under Rule 12(b)(6). *Palko v. Airborne Express, Inc.,* 372 F.3d 588, 597–98 (3[rd]Cir. 2004); *Lomax*

*v. Meracord L.L.C.*, No. 13–1945 (SRC), 2013 WL 5674249, at *6 n.3 (D.N.J. Oct. 16, 2013).

Please note that this matter involves the right to contract clause, as one of the parties to

the contract is the United States and another is the state of South Carolina, and that the United

States Congress has indicated in a recent finding that such contracts are binding (see

congressional finding record P.Bill. S -112 and private law 114-31 (December 3, 2016) whereby

in both instances Congress came to the congressional finding and determination that "**SECTION**

**2. FINDINGS OF CONGRESS.**

(a)  The Congress finds the following:

> (1) That the United States by and through the Attorney General entered into an Agreement with the Parties.

> (2) The Agreement is a valid and binding settlement agreement between the Parties and the United States that operates in the nature of a release-dismissal agreement.

> (3) The Agreement contained an alternative dispute resolution clause that provided for arbitration as the exclusive remedy for relief to the Parties and the United States.

(4)  The United States consented to the arbitration and the awards made thereunder for the equitable relief of the Parties and the United States are binding.

(5) Congress hereby expressly waives any defenses to the equitable relief awarded to the Parties, Beneficiaries, and Corporate Beneficiaries by the arbitrator.

(6)  The parties, beneficiaries and their immediate family members, and the corporate beneficiaries are entitled to the relief established by the Agreement, the Awards, and the provisions of this Act notwithstanding any other law to the contrary. *Provided that,* Joey Brandon Kemp shall not be entitled to any relief or benefits established by the Agreement, the Awards, and this Act.

And this was after Congress had presented the contract to its judiciary committee to determine whether or not the contract was a binding obligation upon the United States of America-

NOVEMBER 5, 2016

MR. PAUL introduced the following bill; which was read twice -**and referred to the Committee on the Judiciary**.

Although in matters of arbitration the court is not permitted to consider and/or construe the merits, only to enforce the arbitration clause within the framework of the contract as agreed upon by the parties.  The court is prohibited from acting as an advocate for either party and/or side in making such determinations, and it appears in this instance the court is a party to the contract which creates an inherent conflict of interest.

## I.        STATEMENT OF FACTS

In South Carolina, contractual arbitration agreements can be enforced under the South Carolina Uniform Arbitration Act (SCUAA) (SC Code § 15-48-10 to 15-48-240), **or the Federal Arbitration Act** (FAA) (9 U.S.C. §§ 1-16, 201-208, 301- 307). Please take special note that memorandum and reference principles are embedded throughout, for simplicity and convenience purposes.

9 U.S. Code § 3 - Stay of proceedings where issue therein referable to arbitration:

**If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, shall on application of one of the parties stay the trial of the action until such arbitration has**

been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration. (July 30, 1947, ch. 392, 61 Stat. 670.)

History in Brief:

The Respondents in this matter have admitted the following:

The respondents admitted that they, **in combination with the federal Reserve Bank, which are for all practical purposes, because of their interlocking activity and practices, and both being Banking Institutions Incorporated under the Laws of the United States, are in the Law to be treated as one and the same Bank, did create the money or credit upon its own books by bookkeeping entry.** That this was the Consideration used to support **the Loan** associated thereto, and that this is a common practice by all Federal Reserve member banks and/or institutions. The money and credit first came into existence when they created it, the Federal Reserve and the financial institutions have admitted that no United States Law or Statute exist which gave them the right to do this. "A lawful consideration must exist and be tendered to support the Note". See Ansheuser-Busch Brewing Company v. Emma Mason, 44 Minn. 318, 46 N.W. 558.

This is a practice that the banks implement internally, they have admitted they have this as a practice, this practice of theirs documents that the account balance was zero, and that they created a new account in a different department which reflected a separate balance. That there were four different balances, there was a loss balance, a credit balance, a zero-out balance and finally there is an internal active system balance. None of which the borrower consented to, nor were any of these extra balances ever brought to the borrower's attention prior to the present time. That these practices do not excuse the fact that the respondents have provided the evidence in support of the presenters claim that the account balance is zero, and that the

account for which they are referring is a new account that they've created without the consent of the presenters, the borrower, or any other party. That they indeed created fraud in the factum by not revealing the origin of the credits being lent, nor revealing the full matrix of the origination of the funds being credited and the requirement for repayment. The plaintiffs made no misinformation to the defendants, who chose to ignore each of their requests for validation of the origination of the loan, and the matrix associated thereto-, the defendants when making the loan, violated Regulation Z of the Federal Truth in Lending Act- 15 USC §1601 and the Fair Debt Collections Practices Act 15 USC §1692; "intentionally created fraud in the factum" and withheld from plaintiff… "vital information concerning said debt and all of the matrix involved in making the loan" **Deutsche Bank v. Peabody, 866 N.Y.S.2d 91 (2008).**

Page 2 of the plaintiff's declaration (BECU (Boeing Credit Union) vs Williams, 2018; the Federal Reserve admitted the following)), clearly highlights the following:

At line 21 through 24 it states-

… **Charge off debt, after it has been delinquent for a sustained period. This process includes BECU applying an internal credit** (a practice for which they never advised the defendant and or the borrower, and a practice which is not agreed to by the parties in the original agreement), **in the amount of the loss** (whereby the Federal Reserve admit to crediting the account of the borrower), **in order to zero out the balance** (here, the Federal Reserve admit that the balance is zeroed out, and that the account has been closed) **and close the account.** (The Federal Reserve's BECU then acknowledge, that they create now a new account internally, and this newly created account, a creation of their own making, that is brought into existence without the borrowers knowledge and/or consent prior to its creation, is not the borrower's responsibility to maintain and or to manage and or to offset, as no agreement exists for such) **the loss balance** (which they have just documented is now zero) **is then transferred from the**

**internal active system to internal collection system. Defendants continues to remain responsible for the loss** (for which they have documented that the amount of the loss is zeroed out and the account is closed, meaning that the presenters is responsible for the amount of zero) (Conclusions, deductions, summarization, emphasis, added). So when the Federal Reserve and its agents have sustained the presenters accusation that the account balance is zero, and provided supported evidence by way of affidavit/declaration and the associated loan documents for which the zero balance is evidenced, the presenters was not required to provide any further evidence about the zero balance that is now proved by the very party who would be required to provide those proves by the actual accounting ledgers, comprehensive in nature and certified by someone duly licensed regarding such record-keeping. We incorporate those records into this instant matter by reference, and demand that they be made to appear on the record immediately as the Federal Reserve and its agents are the custodian of these records and must produce them upon demand.

This establishes the existence of an obligation between the parties, and the presenters contend that the bank had a contractual obligation to inform the borrowers that they were lending BOOKKEEPING ENTRY CREDIT and not US dollars 'or monies which at the time is considered coin or currencies of the United States in general circulation' as defined in statute, they failed to give vital information concerning the debt and all of the matrix involved in making the loan as required by law!

The defendants were notified as to the claim of dispute by the plaintiffs, and that there was a charge of breach of the agreement, and that every instance they refuse to provide a complete comprehensive accounting certified by a licensed accountant as required by law with consumer contracts dealing with commercial transactions.

This matter involves a commercial transaction, placing it within the jurisdiction of the United States Congress who has the premier right of regulating commerce, and incorporates The Federal Arbitration Act, FAA 9 § 1-16.

## A. **The Dispute**.

Shortly after the plaintiffs became aware of the fraud committed against them and their interest referencing a commercial contract, the defendants made several attempts to change the terms and conditions of the original binding contract, and upon the last attempt to change or alter the terms and conditions of the contract, the plaintiff's presented a conditional acceptance of offer/counter offer whereby the defendants if they did not agree had opportunity to express such disagreement while complying with the duty to respond, based on the previous relationship and responsibilities/obligations then in existence between the parties, and they intentionally, deliberately, knowingly, willfully may be conscious choice to acquiesce by not challenging the new contract in any of its aspects, creating tacit acquiescence and estoppel respecting the defendants.

Although not mentioned in the Complaint, the Commercial Agreement also contains an all-encompassing, binding and enforceable Arbitration Clause at which provides in pertinent part as follows:

**"Disputed Matters**.

The defendants and other parties to the agreement have agreed that any and all challenges, disputes, and or other related matters were to be addressed by arbitration, thus they have waived any and all rights and are estopped from bringing forth any challenges in the present matter. Note the agreement clause respecting arbitration, summarized here in part and incorporated herein by reference:

### III.        " ARBITRATION- AN ADMINISTRATIVE REMEDY COGNIZABLE AT LAW

10290.        ADDITIONALLY it is exigent and of consequence for the Undersigned to inform Respondent(s), in accordance with and pursuant to the principles and doctrines of "clean hands" and "good faith," that by Respondents(s) failure and or refusal to respond and provide the requested and necessary Proof of Claims raised herein above and thereby; and it shall be held and noted and agreed to by all parties, that a general response, a nonspecific response, or a failure to respond with specificities and facts and conclusions of common law, and or to provide the requested information and documentation that is necessary and in support of the agreement shall constitute a failure and a deliberate and intentional refusal to respond and as a result thereby and or therein, expressing the defaulting party's consent and agreement to said facts and as a result of the self-executing agreement, the following is contingent upon their failure to respond in good faith, with specificity, with facts and conclusions of common-law to each and every averment, condition, and/or claim raised; as they operate in favor of the Undersigned, through "tacit acquiescence," Respondent(s) NOT ONLY expressly affirm the truth and validity of said facts set, established, and agreed upon between the parties to this Conditional Acceptance for Value and counter offer/claim for Proof of Claim, but Respondent(s); having agreed and consented to Respondent(s) having a duty and obligation to provide the requested and necessary Proof of Claims raised herein above, will create and establish for Respondent(s) an estoppel in this matter(s), and ALL matters relating hereto; and arising necessarily therefrom; and,

10291.        In accordance with and pursuant to this agreement; a contractually (consensual) binding agreement between the parties to this Conditional Acceptance for Value and counter offer/claim for Proof of Claim to include the corporate Government Agency/Department construct(s) whom Respondent(s) represents/serves; as well as, ALL officers, agents, employees, assigns, and the like in service to Respondent(s) will not argue, controvert, oppose, or otherwise protest ANY of the facts already agreed upon by the parties set and established herein; and necessarily and of consequence arising therefrom, in ANY future remedial proceeding(s)/action(s), including binding arbitration and confirmation of the award in the District Court of the United States at any competent court under original jurisdiction, in accordance with the general principles of non-statutory Arbitration, wherein this Conditional Acceptance for the Value/Agreement/Contract no. **2019-0108BRUCWSFCM–S12389981– 5577899811©** constitutes an agreement of all interested parties in the event of a default and acceptance through silence/failure to respond when a request for summary disposition of any claims or particular issue may be requested and decided by the arbitrator, whereas a designated arbitrator shall be chosen at random, who is duly authorized, and in the event of any physical or mental incapacity to act as arbitrator, the Undersigned shall retain the authority to select any neutral(s)/arbitrator(s) that qualify pursuant to the common law right to arbitration, as the arbitration process is a private remedy decided upon between the parties, and with respects this agreement, the defaulting party waives any and all rights, services, notices, and consents to the undersigned and or the undersigned's representative selection of the arbitrator thereby constituting agreement, and any controversy or claim arising out of or relating in any way to this Agreement or with regard to its formation, interpretation or breach, and any issues of substantive or procedural arbitrability shall be settled by arbitration, and the arbitrator may hear and decide the controversy upon evidence produced although a party who was duly notified of the arbitration proceeding did not appear; that the

Undersigned deems necessary to enforce the "good faith" of ALL parties hereto within without respect to venue, jurisdiction, law, and forum the Undersigned deems appropriate.

10292.    Further, Respondent(s) agrees the Undersigned can secure damages via financial lien on assets, properties held by them or on their behalf for ALL injuries sustained and inflicted upon the Undersigned for the moral wrongs committed against the Undersigned as set, established, agreed and consented to herein by the parties hereto, to include but not limited to: constitutional impermissible misapplication of statute(s)/law(s) in the above referenced alleged Commercial/Civil/Cause; fraud, conspiracy (two or more involved); trespass of title, property, and the like; and, ALL other known and unknown trespasses and moral wrongs committed through ultra vires act(s) of ALL involved herein; whether by commission or omission. Final amount of damages to be calculated prior to submission of Tort Claim and/or the filing of lien and the perfection of a security interest via a Uniform Commercial Code financing 1 Statement; estimated in excess of TEN (10) Million dollars (USD- or other lawful money or currency generally accepted with or by the financial markets in America), and notice to Respondent('s) by invoice. Per Respondent('s) failure and or refusal to provide the requested and necessary Proof of Claims and thereby; and therein consenting and agreeing to ALL the facts set, established, and agreed upon between the parties hereto, shall constitute a self-executing binding irrevocable durable general power of attorney coupled with interests; this Conditional Acceptance for Value and counter offer/claim for Proof of Claim becomes the security agreement under commercial law whereby only the non-defaulting party becomes the secured party, the holder in due course, the creditor in and at commerce. It is deemed and shall always and forever be held that the undersigned and any and all property, interest, assets, estates, trusts commercial or otherwise shall be deemed consumer and household goods not-for-profit and or gain, private property, and exempt, not for commercial use, nontaxable as defined by the Uniform Commercial Code article 9 section 102 and article 9 section 109 and shall not in any point and/or manner, past, present and/or future be construed otherwise- see the Uniform Commercial Code article 3, 8, and 9

10293.    Should Respondent(s) allow the ten (10) Calendar days or twenty (20) Calendar days total if request was made by signed written application for the additional ten (10) Calendar days to elapse without providing the requested and necessary Proof of Claims, Respondent(s) will go into fault and the Undersigned will cause to be transmitted a Notice of Fault and Opportunity to Cure and Contest Acceptance to the Respondent(s); wherein, Respondent(s) will be given an additional three (3) days (72 hours) to cure Respondent's (s') fault. Should Respondent(s) fail or otherwise refuse to cure Respondent's(s') fault, Respondent will be found in default and thereby; and therein, Respondent will have established Respondent's(s') consent and agreement to the facts contained within this Conditional Acceptance for Value and counter offer/claim for Proof of Claim as said facts operate in favor of the Undersigned; e.g., that the judgment of alleged "court of record" within the above referenced alleged Commercial/Civil/Cause is VOID AB INITIO for want of subject-matter jurisdiction of said venue; insufficient document (Information) and affidavits in support thereof for want of establishing a claim of debt; want of Relationship with the "source of authority" for said statute(s)/law(s) for want of privity of contract, or contract itself; improperly identified parties to said judgment, as well as said dispute/matter; and, Respondent(s) agrees and consents that Respondent(s) does have a duty and obligation to Undersigned; as well as the corporate Government Department/agency construct(s) Respondent(s) represents/serves, to

correct the record in the above referenced alleged Commercial/Civil/Cause and thereby; and therein, release the indenture (however termed/styled) upon the Undersigned and cause the Undersigned to be restored to liberty, and releasing the Undersigned's property rights, as well as ALL property held under a storage contract in the "name" of the all-capital-letter "named" defendant within the above referenced alleged Commercial/Civil/Cause within the alleged commercially "bonded" warehousing agency d.b.a., for the commercial corporate Government construct d.b.a. the United States. That this presentment is to be construed contextually and not otherwise, and that if any portion and/or provision contained within this presentment, this self-executing binding irrevocable contractual agreement coupled with interests, is deemed non-binding it shall in no way affect any other portion of this presentment. That the arbitrator is permitted and allowed to adjust the arbitration award to no less than two times the original value of the properties associated with this agreement, plus the addition of fines, penalties, and other assessments that are deemed reasonable to the arbitrator upon presentment of such claim, supported by prima facie evidence of the claim.

10294.    The defaulting party will be estopped from maintaining or enforcing the original offer/presentment; i.e., the above referenced alleged *Commercial/Civil/Cause* as well as ALL commercial paper (negotiable instruments) therein, within any court or administrative tribunal/unit within any venue, jurisdiction, and forum the Undersigned may deem appropriate to proceed within in the event of ANY and ALL breach(s) of this agreement by Respondent(s) to compel specific performance and or damages arising from injuries there from. The defaulting party will be foreclosed by laches and or estoppel from maintaining or enforcing the original offer/presentment in any mode or manner whatsoever, at any time, within any proceeding/action. Furthermore, the respondents are foreclosed against the enforcement, retaliation, assault, infringement, imprisonment, trespass upon the rights, properties, estate, person whether legal, natural or otherwise of the presenter/petitioner and/or his interest and/or his estate retroactively, at present, post-actively, forever under any circumstances, guise, and or presumption!

IV.    NOTICE OF COMMON-LAW ARBITRATION:

10295.    Please be advised that in-as-much as the Undersigned has "secured" the "interest" in the "name" of the all-capital-letter "named" defendant as employed/used upon the face; and within, ALL documents/instruments/records within the above referenced alleged *Commercial/Civil/Cause*, to include any and all derivatives and variations in the spelling of said "name" except the "true name" of the Undersigned as appearing within the Undersigned's signature block herein below, through a Common-Law Copyright, filed for record within the Office of the Secretary of State, Columbia State of South Carolina and or Sacramento State of California and or Las Vegas State of Nevada, and, having "perfected said interest" in same through incorporation within a Financing (and all amendments and transcending filings thereto), by reference therein, the Undersigned hereby; and herein, waives the Undersigned's rights as set, established, and the like therein, and as "perfected" within said Financing Statement acting/operating to "register" said Copyright, to allow for the Respondent(s) to enter the record of the alleged "court of record" within the above referenced alleged **Commercial/Civil/Cause** for the SOLE purpose to correct said record and comply with Respondent's(s') agreed upon duty/obligation to write the "order" and cause same to be transmitted to restore and release the Undersigned, the Undersigned's corpus, and ALL property currently

under a "storage contract" under the Undersigned's Common-Law Copyrighted trade-name; i.e., the all-capital-letter "named" defendant within the above referenced alleged Commercial/Civil/Cause, within the alleged commercially "bonded" warehousing agency d.b.a. the commercial corporate Government juridical construct d.b.a. the United States. Please take special note, that the copyright is with reference to the name and its direct association and/or correlation to the presenter.

10296.    **NOTICE**:  That the arbitrators "must not necessarily judge according to the strict law but as a general rule ought chiefly to consider the principles of practical business" Norske Atlas Insurance Co v London General Insurance Co (1927) 28 Lloyds List Rep 104

*    "internationally accepted principles of law governing contractual relations"[ Deutsche Schachtbau v R'As al-Khaimah National Oil Co [1990] 1 AC 295]

*    If the contract (valid or otherwise) contains an arbitration clause, then the proper forum to determine whether the contract is void or not, is the arbitration tribunal.[ For example, see Heyman v Darwins Ltd. [1942] AC 356]

•    That any determination by the arbitrator is binding upon all parties, and that all parties agree to abide by the decision of the arbitrator, that the arbitrator is to render a decision based upon the facts and conclusions as presented within the terms and conditions of the contract. Any default by any party must be supported by proof and evidence of said default, that default shall serve as tacit acquiescence on behalf of the party who defaulted as having agreed to the terms and conditions associated with the self-executing binding irrevocable contract coupled with interests. That the arbitrator is prohibited from considering and/or relying on statutory law, as it has been held that any time any party relies on or enforces a statute, they possess no judicial power

•    "A judge ceases to set as a judicial officer because the governing principals of administrative law provides that courts are prohibited from substituting their evidence, testimony, record, arguments and rationale for that of the agency. Additionally, courts are prohibited from their substituting their judgments for that of the agency." AISI v US, 568 F2d 284.

•    "...judges who become involved in enforcement of mere statutes (civil or criminal in nature and otherwise), act as mere "clerks" of the involved agency..." K.C. Davis, ADMIN. LAW, Ch. 1 (CTP. West's 1965 Ed.)

•    ",...their supposed 'court' becoming thus a court of limited jurisdiction' as a mere extension of the involved agency for mere superior reviewing purposes." K.C. Davis, ADMIN. LAW, P. 95, (CTP, 6 Ed. West's 1977) FRC v G.E. 28I US 464; Keller v PE, 261 US 428

•    "When acting to enforce a statute, the judge of the municipal court is acting an administrative officer and not as a judicial capacity; courts in administrating or enforcing statutes do not act judicially. but, merely administerially." Thompson v Smith. 155 Va. 376. I54 SE 583, 7I ALR 604.

•    "It is basic in our law that an administrative agency may act only within the area of jurisdiction marked out for it by law. If an individual does not come within the coverage of the particular agency's enabling legislation the agency is without power to take any action which affects him." Endicott v Perkins, 317 US 501

•    "It is not every act, legislative in form, that is law. Law is something more than mere will exerted as an act of power...Arbitrary power, enforcing its edicts to the injury of the person and property of its subjects is not law." Hurtado v. California (1884) 110 US 515 (1984).

•    Some of the aforementioned cases are not published, however, these are still fundamental principles of law, and one of the fundamental principles of arbitration is that the arbitrator sits as judge over the facts, and as such to preserve the sanctity of the process an arbitrator receives the same immunity as a judge and is exempt from prosecution and or review, unless it can be proved that the arbitrator intentionally ignored the evidence and acted in conspiracy to defraud the parties.

10297.    As the Undersigned has no desire NOR wish to tie the hands of Respondent(s) in performing Respondent's(s') agreed upon duty/obligation as set, established, and agreed upon within this Conditional Acceptance for Value and counter offer/claim for Proof of Claim and thereby create/cause a "breach" of said contractually binding agreement on the part of the Respondent(s), Respondent(s) is

hereby; and herein, NOTICED that if this waiver of said Copyright is not liberal, NOR extensive enough, to allow for the Respondent(s) to specifically perform all duties/obligations as set, established, and agreed upon within the Conditional Acceptance for Value and counter offer/claim for Proof of Claim: Respondent(s) may; in "good faith" and NOT in fraud of the Undersigned, take all needed and required liberties with said Copyright and this waiver in order to fulfill and accomplish Respondent's(s') duties/obligations set, established, and agreed upon between the parties to this agreement.

10298.    If Respondent(s) has any questions and or concerns regarding said Copyright and or the waiver, Respondent(s) is invited to address such questions and or concerns to the Undersigned in writing, and causing said communiqués to be transmitted to the Undersigned and below named Notary/Third Party. The respondents have acted as if the contract quasi-or otherwise does not place a binding obligation upon their persons, upon their organizations, upon their institutions, upon their job qualifications, and breaching that obligation breaches the contract, for which they cannot address due to the direct conflict of interest. It is as a result of that conflict of interest that binding arbitration shall be instituted

10299.    Your failure to respond, and this would include each of the respondents by their representative, and if represented by the Atty. Gen., such representation must be responsive for each State and/or State organization/department/agency, separately and severally to each of the points of averment, failure to respond to a single point of averment will constitute acquiescence, forfeiture, and a waiver of all rights with respects all of the points raised in this presentment.


## II. LEGAL ARGUMENT


The undersigned respectfully request that this Court compel arbitration per the agreement through the SITCOMM ARBITRATION ASSOCIATION under its Commercial Arbitration Rules now in effect, that such is appropriate as South Carolina has established a policy of favoring arbitration, the parties entered into a valid arbitration agreement, and the arbitration clause contained in the Commercial Agreement is clear and unambiguous. Moreover, none of the parties have waived the opportunity to arbitrate, as the defendants have voluntarily granted power of attorney and authority respecting such to the plaintiff's in this instant matter. As such, this Court in line with statute must compel arbitration.


**B. The Arbitration Clause is Valid and Enforceable**.

Applying South Carolina substantive law, the arbitration clause in the Commercial Agreement is valid and enforceable. Both **the South Carolina Legislature and South Carolina Supreme Court support the enforcement of arbitration provisions for alternative dispute resolution in South Carolina**. The South Carolina Uniform Arbitration Act recognizes that a written provision in a contract to submit any existing controversy to arbitration is valid, enforceable and irrevocable. "… the validity of such a clause initially turns on a showing that the parties have entered into an agreement to arbitrate. SC Code § 15-48-10 ("A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract.); *Soil Remediation Co. v. Nu-Way Envtl., Inc., 323 S.C. 454, 459-60, 476 S.E.2d 149, 152 (1996),* ("arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."). South Carolina law, like federal law, favors enforcement of valid arbitration agreements. *"Mary Beth Marzulli v. Tenet South Carolina, Inc., et al 2018 WL 1531507 (March 28, 2018)."* Any doubts regarding the arbitrability of a dispute are resolved in favor of arbitration. *"Court of Appeals of South Carolina, William B. STOKES, Respondent, v. METROPOLITAN LIFE INSURANCE COMPANY and James Drake, Appellants No. 3551. September 23, 2002."*

"On motion of a person showing an arbitration agreement and alleging another person's refusal to arbitrate pursuant to the agreement… Arbitration- The South Carolina Uniform Arbitration Act ("SCUAA") (SC Code § 15-48-20). and the Federal Arbitration Act ("FAA") (9 U.S.C. sections 1-14):

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. (July 30, 1947, ch. 392, 61 Stat. 670.)

The courts have uniformly held that agreements to arbitrate are specifically enforceable. Silverman v. Fireman's Fund Ins. Co., 96 Nev. 30, 604 P.2d 805 (1980). Any doubts concerning the arbitrability of the subject matter of the disputes are to be resolved in favor of arbitration. Landers v. Fed. Deposit Ins. Corp., 402 S.C. 100, 109, 739 S.E.2d 209, 213 (2013) (citation and internal quotation marks omitted). In the absence of

the most forceful evidence of the purpose to exclude a claim from arbitration, the claim is properly submitted to arbitration. Clark County Public Employees v. Pierson, 106 Nev. 587, 798 P.2d 136 (1990).  Any statements of case laws referenced in this motion and Memorandum that include other states case laws which are uniformly held and construed are incorporated by reference in this matter for this State.

The SCUAA governs the enforcement of arbitral awards rendered in or outside of South Carolina (SC Code § 15-48-10). The SCUAA generally applies to the enforcement of awards that do not involve interstate commerce or that otherwise fall outside the scope of federal statutes. Parties can also agree to apply the SCUAA's enforcement procedures in their arbitration agreements (see CROUCH CONST. CO., INC. v | 405 SC 155 (2013) and Cronus Invs., Inc. v. Concierge Servs., 107 P.3d 217, 224 (Cal. 2005)). The instant matter **involves interstate commerce and other commercial transactions between the parties and is therefore subject to the Federal Arbitration Act as indicated in the aforementioned contract.** *Munoz v. Green Tree Fin. Corp., 343 S.C. 531, 538-39, 542 S.E.2d 360, 363 (2001)*

The Courts having further indicated that the parties are not to be deprived by the Court of the benefit of Arbitration, and any doubt is to be resolved in favor of arbitration. (SCUAA - the arbitration statute makes clear that upon proceedings to compel arbitration the court is not to consider the merits of the dispute sought to be arbitrated.) see Henry Schein, Inc. v. Archer & White Sales, Inc. (Henry Schein) also see- Exber, Inc. V. Sletten Construction Co., 92 Nev. 721, 528 P.2d 517 (1976).

All doubts concerning the arbitrability of the subject matter of the dispute are to be ***resolved in favor of arbitration***. Once it is determined that an arbitrable issue exists, the parties are not to be deprived by the courts of the benefits of arbitration, for which they bargained – speed and the resolution of the dispute and the employment of a knowledgeable and competent arbitrator.  At 729, 558 P.2d 517. (Emphasis added).

In this case, the parties entered into a Commercial Agreement that clearly established arbitration as the forum for dispute resolution.[ibid] Further, the parties agreed arbitration would "be final and binding."[ibid] As such, the parties entered into a valid and enforceable arbitration clause that should require the arbitration of the current related dispute['s]. the Supreme Court of Nevada continues to remind all litigators that the FEDERAL Arbitration Act governs even local disputes between private citizens and contractors.  In fact since its the Supreme Court of Nevada in the _Ballasteros_ decision in February of this year, has issued two more decisions reiterating that holding, recognizing the principles of law in the uniform arbitration act of the state that must be in conformity with the Federal arbitration act of the United States: _Lanier_, 2018 WL 6264809 (Nev. Nov. 28, 2018), and _Greystone Nevada_, 2018 WL 6264756 (Ne. Nov. 28, 2018).  As evidence of interstate commerce, _Lanier_ points to three things: the contractor was incorporated in Delaware (much the same as each of the defendants in this matter), while the private citizens were residents of the great State of Nevada, the large number of subcontractors and material suppliers who worked on the privately owned homes made it likely that at least some of them are engaged in interstate commerce, and "**in the aggregate, the general practice of developing, buying, and selling homes substantially affects interstate commerce**."  All of this mattered as is the case here because trial court judges were relying on South Carolina anti-arbitration rules to refuse to compel arbitration. Those rules are preempted if the dispute is governed by the FAA.

To gain exemption from arbitration, it must be specifically and expressly provided in the Commercial Agreement that a particular grievance is exempted from arbitration. Clark County Public Employees v. Pierson, 106 Nev. 587, 591, 798 P.2d 136 (1990). In the absence of the most forceful evidence of the purpose to exclude a claim from arbitration, **_the claim is properly submitted to Arbitration_**. Therefore, both the South Carolina Legislature and the South Carolina Supreme Court agree – **_agreements to arbitrate should be specifically enforced_**.

The clause in this case expressly covers "any controversy or dispute," including any dispute relating to or arising out of 'the action or inaction of any member/party which is to include the defaulting party.' The clause further bars litigation by stating that 'no action at law or in equity, before any other venue and/or jurisdiction initiated by any party shall be only and exclusively before and by arbitration,' and with the reference to the FAA the context includes the exception, 'except to compel arbitration or to enforce an arbitration award'.

In support of the above statement, "parties to contracts with arbitration provisions may be entitled as a right to compel arbitration, or simply stay the claims pending arbitration, pursuant to the Federal Arbitration Act stay provision, 9 U.S.C. 3." Such mandatory stays are granted in most circuits per *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 n.4 (2009). Courts staying non-signatory claims, either pursuant to 9 U.S.C. 3. or through exercise of courts' "inherent discretion" or the requirements and implications of each type of stay, including appellate issues, are addressed.

## MANDATORY STAYS PURSUANT TO 9 U.S.C. 3

The Federal Arbitration Act,, 9 U.S.C. §1, et seq. ("FAA"), and the state of South Carolina Uniform Arbitration Act, SCUAA, embodies a "liberal policy favoring arbitration agreements…." *AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740, 1749 (U.S. 2011). The FAA applies to any "contract evidencing a transaction involving commerce…" 9 U.S.C.

Section 3 of the FAA states in pertinent part:

**§3. Stay of proceedings where issue therein referable to arbitration**

**"If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court…shall on application of one**

of the *parties* stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement...."

The Supreme Court has interpreted Section 3 as referring to parties to the litigation rather than parties to the contract. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 n.4 (2009). Thus "a litigant who is not a party to the relevant arbitration agreement may invoke Section 3 if the relevant state contract law allows him to enforce the agreement." at 633. Prior to *Carlisle*, the decision whether to stay claims among non-arbitrating parties generally was considered discretionary, except perhaps in the Fifth and Seventh Circuits. The U.S. Supreme Court has interpreted this language as "signal[ing] the broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco*, 539 U.S. 52, 56 (2003). Challenges to the FAA's applicability to construction contracts are rare and would fail under most circumstances. *See Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 21, n. 23, 103 S.Ct. 927 (1983) (indicating by footnote that staying litigation among the non-arbitrating parties "may be advisable" but the "decision is one left to the court...as a matter of discretion to control its dockets."). *Waste Management v. Residuos Industriales Multiquim*, 372 F.3d 339 (5th Cir. 2004); *Hill v. G E Power Systems, Inc.*, 282 F.3d 343, 347–348 (5th Cir. 2002) ("A suit against a nonsignatory that is based upon the same operative facts and is inherently inseparable from the claims against a signatory will always contain 'issue[s] referable to arbitration under an agreement in writing,'" as is required for a stay under 9 U.S.C. 3; "[p]ermitting the action to proceed without a stay as to the [non-signatory] defendant would undermine the arbitration between the plaintiff and the [signatory] defendant, "thereby thwarting the policy in favor of arbitration."); *Kroll v. Doctor's Associates, Inc.*, 3 F.3d 1167, 1171 (7th Cir.1993) ("section three of the Arbitration Act 'plainly requires that a court stay litigation where issues presented in the litigation are the subject of an arbitration agreement.' ... a stay must be granted, even in favor of persons that are not party to the agreement containing the arbitration clause, if the litigation is an attempt 'to evade the agreed-upon resolution of their disputes in the arbitration forum by introducing the identical controversy against a party who is ultimately liable for the arbitrating party's acts.'").

"'**Traditional principles' of state law allow a contract to be enforced by or against nonparties to the contract through 'assumption**, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel....'" *Carlisle*, 556 U.S. at 631. Examples of claims by or against non-signatories that might be appropriately stayed pursuant to 9 U.S.C. 3, include the following: third-party claims under an insurance policy requiring the insured to arbitrate claims, based on a finding that the third-party

claimants are "third party beneficiaries" of the policy (*see Todd v. Steamship Mut. Underwriting Ass'n (Bermuda) Ltd*., 601 F.3d 329, 334 (5th Cir. 2010)); claims against a contractor by its subcontractor's successors, assigns or sub-subcontractors whose agreements sufficiently incorporate obligations of the first-tier subcontract by reference (*see Awuah v. Coverall North America, Inc*., 703 F.3d 36, 43-44 (1st Cir. 2012); and claims by or against a parent company for damages arising out of its subsidiary's contract containing an arbitration provision, based upon equitable estoppel, agency or alter ego theories (*see Physician Consortium Services*, LLC, 2011 WL 480013 (11th Cir. 2011), *Board of Trustees of City of Delray Beach Police and Firefighters Retirement System v. Citigroup Global Markets, Inc.*, 622 F.3d 1335, 1342-1343 (11th Cir. 2010), and *Burnham Enterprises v. Dacc Co. LTD*, 2013 WL 68923 (M.D. AL. 2013)). This would also include third-party servicers, loan officers, accountants, agencies, government corporations under the Foreign Sovereign Immunities Act and the principles outlined in the bank of the United States v. the bank of Georgia were the Supreme Court of the United States concluded that:

" … a sound principle that when a government becomes a partner in any trading company, it divests itself, so far as concerns the transactions of that company, of its sovereign character and takes that of a private citizen. Instead of communicating to the company its privileges and its prerogatives, it descends to a level with those with whom it associates itself and takes the character which belongs to its associates, and to the business which is to be transacted. Thus, many states of this Union who have an interest in banks are not suable even in their own courts; yet they never exempt the corporation from being sued. The State of Georgia, by giving to the bank the capacity to sue and be sued, voluntarily strips itself of its sovereign character so far as respects the transactions of the bank and waives all the privileges of that character. As a member of a corporation, a government never exercises its sovereignty. It acts merely as a corporator, and exercises no other power in the management of the affairs of the corporation than are expressly given by the incorporating act.

The government of the Union held shares in the old Bank of the United States, but the privileges of the government were not imparted by that circumstance to the bank. The United States was not a party to suits brought by or against the bank in the sense of the Constitution. Bank of United States v. Planters' Bank of Georgia, 22 U.S. 9 Wheat. 904 904 (1824), and the Clearfield doctrine.

The Supreme Court went even further in highlighting the parties like the defendants to this matter at bar, that the defendants and that they are either a financial institution and/or associated with the financial institution and or are an entity or agency which bears and employer identification number which is associated with a corporation, either by their charter and or by their being a part of the federal EIN identification system, have consented to being sued and having the power to sue- "the act which gives jurisdiction to the courts of the Union over suits brought by the citizen of one state against the citizen of another restrains that jurisdiction where the suit is brought by an assignee to cases where the suit might have been sustained had no assignment been made. But the bank does not sue in virtue of any right conferred by the Judiciary Act, but in virtue of the right conferred by its charter. It does not sue because the defendant is a citizen of a different state from any of its members, but because its charter confers upon it the right of suing its debtors in a circuit court of the United States …

If the bank could not sue a person who was a citizen of the same state with any one of its members, in the circuit court, this disability would defeat the power. There is probably not a commercial state in the Union some of whose citizens are not members of the Bank of the United States. There is consequently scarcely a debt due to the bank for which a suit could be maintained in a federal court did the jurisdiction of the court depend on citizenship. A general power to sue in any circuit court of the United States, expressed in terms obviously intended to comprehend every case, would thus be construed to comprehend no case. Such a construction cannot be the correct one."

The doctrine of "equitable estoppel" would seem to accommodate a wide-range of colorable arguments for staying or compelling arbitration of claims by or against non-signatories. Courts have "estopped" claimants from avoiding arbitration of non-signatory claims that "make reference to," "presume the existence of," or "arise out of and relate directly to" the written agreement requiring arbitration, or that are "inextricably intertwined with" claims against a signatory. See, e.g., *Field System Machining, Inc. v. Vestas-*

*American Wind Technology, Inc.*, 2013 WL 1943307, 4 (N.D. Ill. 2013); *Escobal v. Celebration Cruise Operator, Inc.*, 482 Fed.Appx. 475, 476, 2012 WL 2947591, 1 (11th Cir. 2012).

In this matter the defendants, failing to highlight on the public record that the parties have entered into this agreement to avoid litigation. The agreement having been in place for more than 30 days has not had a single direct challenge by any party, nor has the power of attorney and or the rights conferred via the power of attorney been challenged by the parties, to the present day, the defendants are estopped from making such claims at present and if they did decide and or attempt to make such claims they would have to do so according to the terms of the agreement i.e. arbitration.

## DISCRETIONARY STAYS

The basis for bringing non-signatories/signatories within the FAA's mandatory stay provision, the decision whether to grant a stay absent federal state provisions of the FAA and or the South Carolina provisions of the SCUAA remains within the courts' inherent discretion to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 166 (1936). Parties to the two cases need not be the same and issues need not be identical to empower a court to stay proceedings in one suit to abide proceedings in the other.

We present to the court evidence that the opposing party where entering into an agreement, now we are presenting the fact that the parties had not complied with the original contract, we also present to the court evidence that the opposing party had attempted to renegotiate the contract (see...**Exhibits – B**, copy of Offer in the form of a monthly statement by Carrington Mortgage Services, LLC on behalf of the holder showing new terms which include a new account number and payment terms for an alleged balance), we provided the court a copy of the renegotiated contract which included the conditional acceptance and offer which incorporated an arbitration clause. This is not an issue as to the binding nature of the contract, but whether or

not the law applies equally, and for this court to hold exception and complete disregard for the principle of law, whereby having a copy of the contract on the record for this court to recognize a party to the contract as being a party to the matter which involves due process.

When the defendants did knowingly and intentionally subject the plaintiffs to undo surprise, violated the rules and procedures for the court, and these are said to be learned individuals. The very same fact that while there were challenges to the alleged foreclosures, the defendants continue to go through with the alleged foreclosure and possible sale of a property in violation of the original agreement and the law known as The Real Estate Settlement Procedures Act, R.E.S.P.A., which also recognizes the right to arbitration. For this court to not acknowledge the plaintiff's right as well as the defendants right to have the matter arbitrated, as directed within the agreement would impose an undue hardship unlike those that could ever be suffered by the opposing party, because such would be an infringement upon due process, the laws and principles of arbitration the courts have agreed to abide by-

It should be noted that when the "connected or related case" is in arbitration, courts are more likely to grant a discretionary stay pending completion of the arbitration, due to the "policy in favor of arbitration..." *See, e.g., Sam Reisfeld v. S. A. Eteco*, 530 F.2d 679, 681 (5th Cir. 1976) (claims involving non-signatories to arbitration agreement signed by their affiliate were properly stayed because they were "inherently inseparable from" the claims at issue in their affiliate's arbitration, and arbitration would otherwise "be rendered meaningless and the policy in favor of arbitration effectively thwarted."). A key factor courts consider is whether the non-signatory's potential liability derives from the conduct or potential liability of a party or signatory, such that staying claims against the non-signatory likely would conserve judicial resources and minimize the possibility of inconsistent results. ; s*ee also Petrik v. Reliant Pharmaceuticals*, 2007 WL 3283170 (M.D. Fla. 2007), citing *Klay v. All Defendants*, 389 F.3d 1191, 1204 (11th Cir. 2004); *Am. Heart Disease Prev. Found. v. Hughey*, 106 F.3d 389, 1997 WL 42714 (4th Cir. 1997).

The most obvious type of claims warranting a discretionary stay (if not a mandatory stay pursuant to 9 U.S.C. 3) are Miller Act claims, which "courts routinely stay…pending arbitration to determine the contractor's liability…" *U.S. f/u/b/o First Call Mechanical v. Sundt Constr., Inc.*, 2007 WL 1655976, 3 (D. Ariz. 2007); *see also U.S. f/u/b/o Milestone Tarant v.  Ins. Co.*, 672 F.Supp.2d 92, 102 n.5 (D. D.C. 2009) ("unless [general contractor] were to intervene in this suit, litigation of [subcontractor]'s claims under the subcontract would occur *through* [the surety].  Arbitration between [subcontractor] and [general contractor] therefore would be far more efficient."); *U.S. ex rel. James B. Donaghey, Inc. v. Dick Corp.*, 2010 WL 4666747, 3 (N.D. Fla. 2010) ("It was not the intention of Congress to extend or enlarge the liability of the surety ... beyond the contractual or quasi-contractual obligations of the contractor who remains primarily liable.'"); *U.S. f/u/b/o Vining Corp. v. Carothers Const., Inc.*, 2010 WL 1931100 *4 (M.D. Ga 2010) ("If a subcontractor could avoid the arbitration requirement in a subcontract by suing only the surety, such a result would effectively render arbitration provisions meaningless."); *U.S. f/u/b/o v. Bencor-Petriford*, 2007 WL 1725468, 3 (N.D. Ind. 2007) (subcontractor's recovery rights against the sureties "necessarily depend on whether [contractor] breached its subcontract with [subcontractor]. "The liability of the sureties…is limited to the liability of the principal [which] will be determined by arbitration, and there is no reason to duplicate the determination here [and] risk inconsistent rulings."); *U.S. ex rel. Humbarger v. Law Co., Inc.*, 2002 WL 436772 at 3 (D. Kan. 2002); *U.S. f/u/b/o Peake Const., LLC v. Crown Roofing Services, Inc.*, 2010 WL 1416673 (E.D. La. 2010) (Miller Act sureties "stand in the shoes of" the general contractor and are entitled to its affirmative defenses); *U.S. ex rel. TGK Enterprises, Inc. v. Clayco, Inc.*, 2013 WL 5348464, 11 (E.D. N.C. 2013); *U.S. ex rel. Tanner v. Daco Const., Inc.*, 38 F. Supp. 2d 1299, 1306 (N.D. Okla. 1999); *U.S. f/u/b/o Tesar v. Turner Const. Co.*, 2009 WL 3626696 *4 (N.D. OH 2009) (staying sub-subcontractor's Miller Act claims against contractor and surety pending sub-subcontractor's arbitration with subcontractor).  *Lee & Rua Co. v. Great American Ins. Co.*, 2008 WL 1868633, 2 (W.D. Wash. 2008).

Litigants opposing a request for discretionary stay pending arbitration often argue a stay will delay recovery of damages owed for an "immoderate" or "indefinite" duration, thereby causing financial hardship,

such would be futile and a waste of the courts time, because any argument asserting such a stance would be

contrary to the principles of arbitration. *See AgGrow Oils, L.L. C. v. National Union Fire Ins. Co. of

Pittsburgh, PA*, 242 F.3d 777, 783 (8th Cir.2001) ("In a complex, multi-party dispute…issues such as the risk

of inconsistent rulings, the extent to which parties will be bound by the arbitrators' decision, and the prejudice

that may result from delays must be weighed in determining whether to grant a discretionary stay, and in

fashioning the precise contours of any stay.") Such arguments often are dismissed by courts as speculative

absent a specific and compelling showing of hardship, particularly when arbitration has commenced or, better

yet, a final arbitration hearing date has already been set. See, e.g., *United States ex rel. MPA Constr. v. XL

Specialty Ins. Co.*, 349 F.Supp.2d 934, 939 (D. Md. 2004) "It is a somewhat peculiar stance to assert that delay

will cause financial hardship while simultaneously requesting that the court allow full-blown litigation to

proceed. **One of the primary reasons why the law favors arbitration is to resolve cases more quickly and

efficiently**."

## APPEALABILITY OF ORDERS GRANTING OR REFUSING A STAY

"All that matters for appealability…is that the appellant sought the stay on the authority of [9 U.S.C. 3],

whether or not the stay was authorized by that section." *See GEA Group AG v. Flex-N-Gate Corp.*, 2014 WL

97289, 3-4 (7th Cir. 2014)*, citing Carlisle*, 556 U.S. at 631

        If a motion for stay is denied, it will be immediately appealable pursuant to 9 USC 16(a)(1)(A). *; see

also Conrad v. Phone Directories Co., Inc*., 585 F.3d 1376, 1385 (10th Cir. 2009) ("The first, simplest, and

surest way to guarantee appellate jurisdiction under § 16(a) is to caption the motion in the court as one brought

under FAA § § 3 or 4. …  This simple rule should dispose of the vast majority of cases in this area, and those

hoping to avail themselves of the immediate appeal provided for in the FAA would do well to follow

it."). Notably, dicta in the *Conrad* decision states: "if the court suspects that the motion has been mis-captioned

in an attempt to take advantage of § 16(a), it must look beyond the caption" to "determine whether it is plainly

apparent from the four corners of the motion that the movant seeks only the relief provided for in the FAA, rather than any other judicially-provided remedy." *Conrad*, 585 F.3d at 1385. Counsel should consider this admonition and potential implications for appealability, even if briefly, in deciding upon an alternative request for stay pursuant to the court's inherent discretion.

If the court were to deem it unnecessary to stay the matter pending arbitration, it would then be subjecting the state and the parties to greater expense by having an appeal filed and prosecuted, where the FAA and the favorability of arbitration over litigation are the principal foundations for such and entertainment of such a request. The state law cannot interfere with liberal policy favoring arbitration. *Wells v. Chevy Chase Bank, F.S.B.*, 768 A.2d 620 (2001). Generally, stay orders direct clerks of court to administratively close the cases pending the outcome of arbitration, rather than dismissing the cases. Such orders are almost always interlocutory. *See Kaplan Industry, Inc. v. Oaktree Capital Management, LP*., 2011 WL 5599380, 1 (11th Cir. 2011) (granting appellee's motion to dismiss appeal, for lack of jurisdiction, of an order granting appellee's motion for a stay pending the parties' arbitration proceedings, pursuant 9 U.S.C. § 3, because court merely administratively closed the case without dismissing it and did not certify the appeal under 28 U.S.C. §1292(b)); *Cf. Green Tree Financial*, 531 U.S. at 87 n. 2 ("Had the Court entered *a stay* instead of a dismissal in this case, that order would not be appealable [per 9 U.S.C. § 16(b)(1)]").

## The Contract is Clear and Unambiguous.

The Commercial Agreement between Plaintiffs and the Defendants referenced clearly and unambiguously requires arbitration for all disputes. South Carolina Courts consistently enforce unambiguous contracts according to their plain language. Similar matter- Renshaw v. Renshaw, 96 Nev. 541, 611 P.2d 1070 (1980). The Supreme Court in Reynolds versus the United States decided on January 23, 2012 came to the same conclusion when considering statutory interpretation, there is the plain meanings doctrine. The contract stipulates that it "must be construed contextually and not otherwise", and such a construction was agreed to by

all the parties to the contract, and specifically the contract holds that in line with the FAA only the arbitrator has the authority to determine the binding nature of the agreement. Courts are bound by language that is clear and free of ambiguity and cannot, using the guise of interpretation, distort the plain meaning of the agreement. Related principle ruling- Watson v. Watson, 95 Nev. 495, 496 P.2d 507 (1979).

In this case, there is no doubt the parties agreed to a clear and unambiguous requirement to arbitrate, in fact the word arbitrate appears throughout the document/instruments/contract more than 15 times. Moreover, the language clearly evidences an agreement to arbitrate disputes arising from the actions or inactions of Members/parties to the agreement.  Finally, it is clear from the language of the contract that the parties intended arbitration to be "final and binding." As such, the contract clearly and unambiguously requires that the parties arbitrate this dispute and this Court should enforce the clear language of the Commercial Agreement between the parties. See, e.g., Southern Trust Mortgage Co. V. Kay & Door Co., Inc., 104 Nev. 564, 763 P.2d 353 (1988) (holding that where a document is clear and unambiguous, *the court must construe the document from its language*); see, e.g., Love v. Love, 114 Nev. 572, 959 P.2d 523 (1998) (concluding that a clear and unambiguous document on its face must be *construed according to its plain language*); see, e.g., Ellison v. California State Automobile Association, 106 Nev. 601, 797 P.2d 975 (1990) (finding that Commercial Agreements are construed from written language and *enforced as written*). Needless to say, the *overwhelming* authority from the South Carolina Supreme Court and elsewhere holds that unambiguous Commercial Agreements must be construed according to their plain language.

## The Commercial Agreement Clearly and Unambiguously Requires Arbitration.

The arbitration clause is clearly and unambiguously written. In particular, the provision governing disputes of the Commercial Agreement is wholly free of ambiguity and clearly states that *any dispute must be settled by Arbitration*. Moreover, the Commercial Agreement specifically involves commerce and

because it involves commerce it provides that the Arbitration should take place according to the rules of FAA. The Arbitration clause was **fully negotiated and executed**. Thus, given the clear and unambiguous language of the Commercial Agreement requiring arbitration and South Carolina's presumption in favor of arbitration, the Commercial Agreement should be specifically enforced, requiring that this dispute be submitted to binding arbitration and that this litigation is stayed in the interim, and the Defendant's claims dismissed as a result of estoppel.

In the instant case, no discovery has taken place and there has not been significant activity towards litigating either party's claims or defenses. No Answer has yet been filed. No discovery has taken place. Therefore, no parties will suffer prejudice from the change of forum from this Court to arbitration. As there is no prejudice, this Court should compel arbitration.

## The Court is Not to Consider the Merits.

The United States Supreme Court prohibits consideration of the merits on a motion to compel. The Supreme Court held that "there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" AT & T Tech., Inc. v. Communications Workers of Am., 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986) (quoting Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960)). In ruling on the arbitrability of a dispute, **a court should not decide the merits of the underlying claims**. *See* AT & T Tech., 475 U.S. at 649.

In a unanimous decision on January 8, 2019 in Henry Schein, Inc. v. Archer & White Sales, Inc. (Henry Schein), the US Supreme Court confirmed that the United States is a pro-arbitration jurisdiction that

will honor parties' agreements to arbitrate. Specifically, where an arbitration clause clearly delegates the decision of arbitrability to the arbitrators, courts should have no say in the matter–even if they perceive the argument in favor of arbitration as "wholly groundless." This decision provides clarity for potential disputants and is in line with prior Court precedent prohibiting courts from reviewing the merits of a dispute when properly delegated to an arbitrator.

## The Scope of the Broad Arbitration Clause

Generally speaking, arbitration clauses are referred to as being "broad" or "narrow." Typically, broad arbitration clauses encompass all of the parties' disputes arising out of their agreement, whereas narrow clauses are intended to limit the disputes that are only specifically referred to arbitration. For instance, in Parfi Holding AB v. Mirror Image Internet, Inc., 817 A.2d 149 (Del. 2002), the parties agreed to arbitrate any dispute "arising out of or in connection with" their agreement, and like the case at bar. The Delaware Supreme Court held that the parties had "signaled an intent to arbitrate all possible claims that touch on the rights set forth in their contract." Language such as "all disputes arising out of the Commercial agreement are subject to arbitration" or "any dispute or controversy arising under this Commercial agreement shall be submitted to binding arbitration" is equally effective in evincing the parties' intent to submit all of their disputes to arbitration. See, e.g., Drafting Arbitration Provisions for LLC Agreements, D. GaHuso, ABA Business Law Today, Vol. 18, April 2009. The arbitration clause clearly indicated the party's intentions to 'arbitrate any and all disputes and/or controversy arising from the agreement and or related issues'.

As indicated in the complaint mortgage insurance is a federal requirement for all conventional home loans as a result of the 1978-1980 Financial Crisis, whereby the Reagan administration with the help of the Republican Congress placed into law, the requirement for all conventional home loans to be back by mortgage insurance, and further back by a government guarantee. Such a program known as the SINGLE-FAMILY

HOME GUARANTEE LOAN PROGRAM was instituted conferring upon each of these conventional home loans the backing of the full faith and credit of the United States government.

The contract incorporates the United States government as a party, and under the contract clause of the United States Constitution, the jurisdiction over such contracts rests with the United States Congress. We remind the court that it too is a party to the contract along with the state of South Carolina through the Atty. Gen. and through the judicial Council for the state of South Carolina, as they were parties to the contract and have consented to the agreement that is binding and irrevocable respecting all parties to that agreement. There appears to be a conflict of interest, and any adverse decision by the court may be perceived as self-serving and/or discretion abuse.

## III. THE FEDERAL ARBITRATION ACT ("FAA")

As previously stated The Federal Arbitration Act (the "FAA" or the "Act") provides that written arbitration agreements are "valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (1999). **The main purpose of the Arbitration Act is "to overcome courts' refusals to enforce agreements to arbitrate."** Allied-Bruce, 513 U.S. at 270. In passing the FAA, Congress was "motivated first and foremost by a desire to change this [trend] … to enforce [arbitration] agreements into which parties had entered, and to place such agreements 'upon the same footing as other contracts.'" (Emphasis added citations omitted).

To fulfill the purpose of enforcing arbitration clauses more uniformly throughout the country, Congress established a broad principal of enforceability within the provisions of the FAA. Doctor's Assoc. V. Casarotto, 517 U.S. 681, 685 (quoting Southland Corp. v. Keating, 465 U.S. 1, 11 (1984)). The Supreme Court has determined that **"Congress would not have wanted state and federal courts to reach different**

outcomes about the validity of arbitration in similar cases." <u>Allied-Bruce</u>, 513 U.S. at 72, *citing* <u>Southland</u> <u>Corp.</u>, 465 U.S. at 15-16. Accordingly, the **"the Court also concluded that the Federal Arbitration Act preempts state law; and it held that state courts cannot apply state statutes that invalidate arbitration agreements."** Hence, the outcome should be the same in state and federal court, applying state or federal statutes, which is precisely why we have used case law from the various states, and the various states Supreme Court as well as United States Supreme Court, because the arbitration laws throughout United States must be uniformed and the decisions rendered by the courts in reference to the arbitration laws must follow the same principles of uniformity.

## THE CONCLUSION

As of the date of this filing, the main parties if not all parties to the conditional acceptance agreement referenced above and filed in this case as evidence labeled as **Exhibits – A** are in default of both the Original agreement referenced above and the addendum **(See Exhibits – B)** to that agreement and Plaintiffs respectfully present this motion to compel arbitration, to dismiss the claims and/or motions and or filings of the defendants and or magistrate responding on behalf of the Defendants in any form or fashion as barred by estoppel principal and agreement, and to stay the plaintiff's claims. The plaintiffs request that this Court compel the arbitration of the dispute between Plaintiffs and Defendants. The parties entered into a valid, clear and unambiguous arbitration agreement requiring arbitration of claims concerning the action or inaction of any party to the agreement. A dispute has now arisen concerning Defendants' actions as a member and/or party to the agreement. As such, the arbitration provision in the agreement between the parties should be given its full force and effect and this case should proceed through final and binding arbitration before the Arbitration Association agreed upon by the parties which may or maynot be the SAA (Satcomm Arbitration Associaton).

This lawsuit should be stayed pending binding arbitration. South Carolina law (as articulated by both the South Carolina Legislature and the South Carolina Supreme Court), as well as the Federal Arbitration Act, uniformly hold that the arbitrability of disputes agreed upon in a written Contract or Agreement must be enforced. Moreover, South Carolina law consistently enforces the clear and unambiguous language of contracts, particularly broad arbitration provisions such as that presented here. In this case, the clear and unambiguous contractual provision requires arbitration of "any disputes and/or controversies" arising out of or related to the Commercial Agreement. Pursuant to both the South Carolina Uninform Arbitration Act and the Federal Arbitration Act, this dispute should immediately be submitted to binding arbitration and this litigation stayed in the interim.

DATED

this 27th day of February, 2019

RESPECTFULLY PRESENTED,

"Without Prejudice"

*Nelson L. Bruce* -void 2-27-2019

THE BENEFICIAL OWNER OF THE CESTI QUI EQUITABLE TRUST
Nelson L. Bruce, Propria Persona, Sui
Juris All Rights Explicitly Reserved and
Retained U.C.C. 1-207/1-308, 1.103.6
c/o PMB 1605 Central Avenue, Ste.6 #167 Summerville South Carolina 29483
Ph. 843-437-7901